BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEAH STEEL CORPORATION,<br><br>       Plaintiff<br><br>    v.<br><br>UNITED STATES,<br><br>       Defendant. | Court No. 22-00338 |

COMPLAINT

Plaintiff SeAH Steel Corporation ("Plaintiff"), files this complaint to contest the final determination by the U.S. Department of Commerce ("Commerce") in the countervailing duty investigation of Oil Country Tubular Goods ("OCTG") from the Republic of Korea.

JURISDICTION

1. This action arises out of a countervailing duty investigation conducted by Commerce pursuant to Section 701 of the Tariff Act of 1930, as amended (the "Tariff Act"), 19 U.S.C. § 1671. Commerce published notice of the final determination of the review in the *Federal Register* on September 29, 2022. *See Oil Country Tubular Goods from the Republic of Korea: Final Affirmative Countervailing Duty Determination*, 87 Fed. Reg. 59056 (September 29, 2022).

2. This action is commenced pursuant to Sections 516A(a)(2)(A) and (B)(i) of the Tariff Act, 19 U.S.C. §§ 1516a(a)(2)(A) and (B)(i). Consequently, this Court has jurisdiction over this matter by reason of 28 U.S.C. § 1581(c), which confers upon the Court exclusive jurisdiction over civil actions commenced under Section 516A of the Tariff Act.

PLAINTIFF'S STANDING TO COMMENCE THIS ACTION

3. Plaintiff is a producer and exporter of oil country tubular goods from Korea, the subject merchandise at issue in this appeal. Plaintiff participated as a respondent in the countervailing duty investigation that is the subject of this appeal. Accordingly, Plaintiff is an "interested party" within the meaning of section 771(9)(A) of the Tariff Act, as amended, 19 U.S.C. § 1677(9)(A), and has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

TIMELINESS OF THIS ACTION

1. On September 29, 2022, the *Final Determination* was published in the *Federal Register*. *See Oil Country Tubular Goods from the Republic of Korea: Final Affirmative Countervailing Duty Determination*, 87 Fed. Reg. 59056 (September 29, 2022). The final countervailing duty order was published on November 21, 2022. *See Oil Country Tubular Goods From the Republic of Korea and the Russian Federation: Countervailing Duty Orders*; 87 Fed. Reg. 70782 (Nov. 21, 2022).

2. On December 13, 2022, Plaintiff initiated this action by filing a summons and this complaint within the time specified by Section 516A(a)(2) of the Act, 19 U.S.C. § 1516a(a)(2)(B), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of this Court, which permits parties to challenge the final results of a countervailing duty investigation that results in a countervailing duty order by filing a summons within 30 days after publication of the countervailing duty order, and a complaint within 30 days thereafter.

STATEMENT OF FACTS

3. On November 1, 2021, Commerce initiated the countervailing duty investigation of Oil Country Tubular Goods from Korea. *See Oil Country Tubular Goods from the*

*Republic of Korea and the Russian Federation: Initiation of Countervailing Duty Investigations*, 86 Fed. Reg. 60210 (November 1, 2021).

4. On November 22, 2021, Commerce selected Hyundai Steel Company ("Hyundai") and SeAH Steel Corporation ("SeAH") as the mandatory respondents. Commerce's November 24, 2021, initial questionnaire asked SeAH to report, amongst other things, information on any assistance received from the KEXIM Performance Guarantee program during the period of investigation. The limitation of this request to guarantees received during the investigation period was consistent with Commerce's longstanding practice, which considers the benefit of a guarantee to be received by the recipient in the year in which the guarantee is issued by the guarantor.

5. SeAH had not received any guarantees from KEXIM during the investigation period. It did have a guarantee under the KEXIM Performance Guarantee program that had been received in 2019 (before the investigation period). Because SeAH had not received any guarantees during the investigation period, and because Commerce's questionnaire only requested information about guarantees received during the investigation period, SeAH informed Commerce that it had not received any performance guarantees from KEXIM during the investigation period. Commerce did not request further information on this program from SeAH.

6. On March 14, 2022, Commerce issued a preliminary negative countervailing duty determination. *See Oil Country Tubular Goods from the Republic of Korea: Preliminary Negative Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination*, 87 Fed. Reg. 14248 (March 14, 2022).

7. On June 29, 2022, Commerce issued a post-preliminary analysis addressing certain new subsidy allegations made by petitioners that had not been addressed in its preliminary determination. Once again, Commerce determined that, even after considering the new subsidy allegations, SeAH's subsidy rate was *de minimis*.

8. Commerce conducted an on-site verification of SeAH from August 22, 2022, through August 25, 2022. Commerce's verification agenda for SeAH requested that SeAH "provide all appropriate source records to substantiate the completeness and accuracy of the information in the responses, including ... non-use of programs," and specifically asked SeAH to demonstrate "non-use" of the KEXIM Performance Guarantee program. The verification agenda also stated that to verify non-use, Commerce would examine all notes attached to SeAH's audited financial statements for the investigation period (*i.e.*, the 2020 calendar year) and the prior fourteen years corresponding with the average-useful-life period (*i.e.*, the 2005-2019 calendar years).

9. SeAH prepared a package on "non-use" that was presented to Commerce officials on the third day of verification. That package addressed all of the programs identified in the petition that SeAH had not received during the relevant time period. Through references to normal company documents, accounting records, and financial statements, the package confirmed that SeAH had not received any of the "non-use" programs (including the KEXIM Performance Guarantee program) during the relevant periods.

10. To demonstrate non-use of the KEXIM Performance Guarantee program (and other guarantees), the package presented by SeAH included a copy of a document maintained by SeAH in the normal course of business that listed all liabilities and

guarantees for its 2019 and 2020 fiscal years. The total amounts of liabilities and guarantees identified in that document were then tied to SeAH's audited financial statements for its 2019 and 2020 fiscal years, with copies of the relevant pages of the financial statements included in the package. Finally, the package also included copies of both the performance guarantee contract and the underlying sales agreement that had required SeAH to obtain the performance guarantee. Those documents confirmed that the guarantee was received in 2019, that the guarantee was tied to a particular export of stainless steel pipe to Canada, and that the guarantee was due to remain in effect until the end of 2020, because the underlying sales contract required performance by SeAH during 2020 as well as 2019. Furthermore, the information presented in the non-use package identified the total amount guaranteed by the export performance guarantee. (In this regard, it should be noted that, even if the total amount guaranteed had been considered to be a subsidy and allocated over SeAH's sales during the year in which the guarantee was received, the resulting benefit would have been less than 0.5 percent.)

11. The day after SeAH presented the non-use package, the Commerce officials conducting the verification requested further information on the export performance guarantee. Specifically, Commerce officials asked SeAH to provide information on when payments to KEXIM were made, and whether KEXIM had made any payments to SeAH or to SeAH's customer under the guarantee. In response, SeAH provided information demonstrating that SeAH had made payments to KEXIM in 2019 and 2020 and that KEXIM made no payments to SeAH or to SeAH's customer under the guarantee. Furthermore, the information presented in response to Commerce's request confirmed that

the guarantee SeAH had obtained from KEXIM in 2019 related to a sales contract to a non-subject third-country customer for non-subject merchandise.

12. After SeAH provided that information, the Commerce officials conducting the verification informed SeAH and its counsel that they had consulted with other Commerce officials and concluded that all of the information concerning the KEXIM export performance guarantee constituted untimely "new factual information." As a result, the Commerce officials removed those materials from the documents retained as the official verification exhibits.

13. After informing SeAH of this decision, the Commerce official who was primarily responsible for verification of this issue discussed with SeAH and its counsel how he intended to write-up the issue in the verification report. As a courtesy, he read aloud the draft of the discussion of the KEXIM export performance guarantee. His draft explicitly mentioned, *inter alia,* the amount of the guarantee.

14. On September 1, 2022, Commerce issued its verification report for SeAH. In that report, Commerce stated that, although Commerce had asked for information about the KEXIM Performance Guarantee program in the initial questionnaire, SeAH had failed to provide the requested information in its response to that questionnaire. The verification report stated that the information presented at verification demonstrating non-use of that program was properly excluded from the verification exhibits as "new factual information." Significantly, the final version of the verification report did not include the amount of the guarantee. In other words, a decision was made after the verification to modify the report drafted by the Commerce official who conducted the verification of this issue.

15. In accordance with the schedule set by Commerce, interested parties submitted their case briefs and rebuttal briefs. In its case brief filed on September 8, 2022, SeAH argued, *inter alia*, that Commerce's decision to reject the information presented at verification regarding the KEXIM Performance Guarantee as "new factual information" was improper and inconsistent with the instructions set forth in the verification agenda; that Commerce's description of the information presented at verification regarding the KEXIM Performance Guarantee program in its verification report was incomplete and erroneous; and that any subsidy calculated for the KEXIM Performance Guarantee program must be calculated based on the value of the guarantee identified in SeAH's 2019 financial statements that were provided to Commerce officials during verification. In support of these arguments, SeAH provided a copy of the original non-use package that was provided to Commerce officials during verification and a notarized affidavit from the accountant who presented the materials at verification describing what happened during verification.

16. On September 9, 2022, Commerce rejected SeAH's case brief on the grounds that the discussion of the information presented to Commerce officials at verification constituted untimely "new factual information." Commerce requested that SeAH file a redacted case brief by September 12, 2022. SeAH filed comments objecting to Commerce's rejection of its case brief on September 10, 2022. Because Commerce had not responded to SeAH's objection, SeAH filed a redacted case brief on September 12, 2022.

17. On September 13, 2022, Commerce revised its decision, concluding that much of the information it had asked SeAH to redact from its September 8 case brief was not "new

factual information." Accordingly, Commerce asked SeAH to file a second redacted case brief that only redacted the attachment to SeAH's case brief which contained the original verification package for the KEXIM Performance Guarantee and the accountant's affidavit, and all references within the case brief to those materials. In accordance with those instructions, SeAH filed a second redacted case brief on September 13, 2022.

18. On September 16, 2022, Petitioners filed a letter claiming that the value of the KEXIM performance guarantee was "new factual information," and requested that Commerce strike all references to that figure and related arguments from SeAH's second redacted case brief and rebuttal brief. SeAH filed comments objecting to Petitioner's request on September 19, 2022. The same day, Commerce granted Petitioners' request in part, and asked SeAH to redact from its case and rebuttal briefs all references to the value of the guarantee from its 2019 financial statements. On September 20, 2022, SeAH filed a third redacted case brief and a redacted rebuttal brief in accordance with Commerce's instructions.

19. On September 29, 2022, Commerce issued a final affirmative determination in which it applied adverse facts available for the KEXIM Performance Guarantee program and resulted in a 1.33 percent *ad valorem* subsidy for SeAH. On November 21, 2022, a countervailing duty order was issued.

20. This appeal followed.

STATEMENT OF CLAIMS

21. In this appeal, Plaintiff challenges Commerce's final determination in the countervailing duty investigation on *OCTG from Korea*, and in particular, Commerce's treatment of information related to the KEXIM Performance Guarantee Program presented

at verification as "new factual information" and decision to apply adverse facts available for the KEXIM Performance Guarantee program to SeAH. Commerce's determination was arbitrary and capricious, unsupported by substantial evidence on the record, or otherwise not in accordance with law, for the following reasons, amongst others:

(1) The questionnaire only requested information on performance guarantees received from KEXIM during the investigation period and did not request information on performance guarantees received from KEXIM prior to the investigation period, even if those guarantees had remained outstanding during the investigation period;

(2) The information presented during verification regarding SeAH's "non-use" of the KEXIM Performance Guarantee program during the investigation period was consistent with the information requested in Commerce's verification agenda and the requests made by Commerce officials during verification, and constitutes part of the administrative record pursuant to 19 U.S.C. § 1516a(2)(A), which provides that "the record, unless otherwise stipulated by the parties, shall consist of … a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding…";

(3) The information provided in SeAH's case and rebuttal briefs rejected by Commerce was not "new factual information;"

(4) All information needed to evaluate the KEXIM Performance Guarantee program received by SeAH was available on the record;

(5)  Record evidence confirmed that any "subsidy" from the performance guarantee that SeAH received from KEXIM cannot properly be attributed to sales of OCTG to the United States during the investigation period under the statute and Commerce's regulations; and

(6)  The subsidy rate applied by Commerce was inconsistent with the information on the record regarding the amount of the guarantee and the terms under which it was provided.

### DEMAND FOR JUDGMENT

22.  WHEREFORE, Plaintiff respectfully requests this Court to:

(1)  Declare Commerce's *Final Determination* to be arbitrary and capricious, unsupported by substantial evidence, and otherwise not in accordance with law; and

(2)  Remand this matter to Commerce for disposition in a manner consistent with the judgment of this Court; and

(3)  Provide such other relief as this Court deems appropriate.

Respectfully submitted,

/s/ Jeffrey M. Winton
Jeffrey M. Winton
Amrietha Nellan
Jooyoun Jeong
Ruby Rodriguez

WINTON & CHAPMAN PLLC
1900 L. St., N.W., Suite 611
Washington, DC  20036
(202) 774-5500

Attorney for SeAH Steel Corporation

Dated:  December 13, 2022