UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION,<br><br>     *Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>     *Defendant,*<br><br>and<br><br>BORUSAN MANNESMANN PIPE<br>U.S. INC., ET AL.,<br><br>     *Defendant-Intervenors.* | Court No. 22-00338 |

**RESPONSE BRIEF OF DEFENDANT-INTERVENORS IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Roger B. Schagrin
Christopher T. Cloutier
Luke A. Meisner
Justin M. Neuman*
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel to Borusan Mannesmann
Pipe U.S., Inc., PTC Liberty Tubulars
LLC, the United Steel, Paper and
Forestry, Rubber, Manufacturing,
Energy, Allied Industrial and Service
Workers International Union, AFL-
CIO, CLC, and Welded Tube USA,
Inc.*

*Admitted only in Ohio. Practice
limited to federal agencies and courts.

Dated: May 30, 2023

## TABLE OF CONTENTS

RULE 56.2 STATEMENT ........................................................................................................ 2

STATEMENT OF THE FACTS ............................................................................................... 3

STANDARD OF REVIEW ...................................................................................................... 5

ARGUMENT ............................................................................................................................ 6

   I.   The Information Provided by SeAH at Verification Constitutes Untimely New
      Factual Information ........................................................................................................ 6

  II.  Commerce Lawfully Excluded Untimely New Factual Information From the
      Record of the Investigation, Leaving Gaps in the Administrative Record ......................... 9

 III.  Commerce Lawfully Applied Adverse Facts Available to Fill Gaps Caused by
      SeAH's Failure to Provide Information Requested by Commerce ................................. 12

      CONCLUSION ................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Canadian Solar International Limited v. United States*, Case 2020-2162, 2023 WL 3557852 (Fed. Cir. May 19, 2023) ....................................................................... 11

*Canadian Solar Int'l Ltd. et al. v. United States*, 399 F. Supp. 3d 1379 (CIT 2019)) ................ 11

*Changzhou Trina Solar Energy Co. v. United States*, 195 F. Supp. 3d 1334 (CIT 2016) .......... 14

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ........................................................ 5

*Fischer S.A. Comercio v. United States*, 700 F. Supp. 2d 1364 (CIT 2010) .............................. 10

*Goodluck India Limited v. United States*, 393 F. Supp. 3d 1352 (CIT 2019) ............................ 10

*Guizhou Tyre Co., Ltd. v. United States*, 523 F. Supp. 3d 1312 (CIT 2021) ...........................9-11

*Hyundai Heavy Indus., Co. v. United States*, 399 F. Supp. 3d 1305 (CIT 2019) .................. 12-13

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) .............................. 5

*Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017) ...................................... 15

*Nan Ya Plastics Corp. v. United States,* 810 F.3d 1333 (Fed. Cir. 2016) .................................... 10

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ............................. 12-13, 15

*POSCO v. United States*, 296 F. Supp. 3d 1320 (CIT 2018). .................................................. 13-15

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ............................................................................................................................. 5

**Statutes**

19 U.S.C. § 1516a ............................................................................................................................ 5

19 U.S.C. § 1677e ..............................................................................................................11-12, 14-15

19 U.S.C. § 1677m.......................................................................................................................... 11

**Regulations**

19 C.F.R. § 351.104 ......................................................................................................................... 4

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE MARK A. BARNETT, CHIEF JUDGE

_____
                                        )
SEAH STEEL CORPORATION,                 )
                                        )
                    *Plaintiff,*        )
                                        )        Court No. 22-00338
        v.                              )
                                        )
UNITED STATES,                          )
                                        )
                    *Defendant,*        )
                                        )
        and                             )
                                        )
BORUSAN MANNESMANN PIPE                 )
U.S. INC., ET AL.,                      )
                                        )
                    *Defendant-Intervenors.*  )
                                        )
_____ )

## RESPONSE BRIEF OF DEFENDANT-INTERVENORS IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to USCIT Rule 56.2 and the Court's February 15, 2023 scheduling order, Defendant-Intervenors Borusan Mannesmann Pipe U.S., Inc., PTC Liberty Tubulars LLC, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Welded Tube USA, Inc. (collectively, "Defendant-Intervenors") hereby submit the following response in opposition to the motion for judgment on the agency record filed by Plaintiff SeAH Steel Corporation ("SeAH") in the above-captioned action.

1

## RULE 56.2 STATEMENT

### A.    Determination Under Review

The administrative determination under review is the final determination of the Department of Commerce ("Commerce") in the countervailing duty investigation of oil country tubular goods from the Republic of Korea, published as *Oil Country Tubular Goods from the Republic of Korea: Final Affirmative Countervailing Duty Determination*, 87 Fed. Reg. 59,056 (Dep't Commerce Sept. 29, 2022) (Public Record ("P.R.") 382)[1] and accompanying Issues and Decision Memorandum ("IDM") (P.R. 377).

### B.   Issues Presented

1. *Whether certain information provided by SeAH at verification constitutes untimely new factual information?*

   <u>Defendant-Intervenors' Position</u>: Yes; the additional documents provided by SeAH at verification constituted untimely new factual information that should have been provided in response to Commerce's initial questionnaire.

2. *Whether Commerce was correct in rejecting SeAH's untimely new factual information from the administrative record of the investigation?*

   <u>Defendant-Intervenors' Position</u>: Yes; because the new factual information presented for the first time at verification was untimely pursuant to Commerce's regulations, it should have been rejected from the record.

3. *Whether SeAH's failure to include the information provided at verification in SeAH's response to Commerce's initial questionnaire warrants a finding that SeAH failed to act to the best of its ability in providing information and the application of adverse facts available?*

---

[1] Citations to documents on the public administrative record are denoted as "P.R." in this brief. This brief contains no confidential information subject to the governing protective order.

<u>Defendant-Intervenors Position</u>: Yes; because SeAH waited until verification to present information that should have been provided in response to Commerce's initial questionnaire, SeAH failed to act to the best of its ability and the application of adverse facts available is warranted.

## STATEMENT OF THE FACTS

Defendant-Intervenors agree with the statement of the facts as presented in Defendant's response brief (DOJ Br. at 2-7). However, Defendant-Intervenors wish to supplement the facts as identified in the Defendant's brief to reflect an additional incident of SeAH's failure to respond to requests for information from Commerce. In particular, in the "General Questions" section of the initial questionnaire issued to SeAH on November 24, 2021, Commerce requested that SeAH "provide your company's complete audited financial statements for the last three fiscal years." Initial Questionnaire at Section III at 4 (Nov. 24, 2021) (P.R. 129). Further, Commerce clarified that these financial statements "should include the complete set of statements, *e.g.*, income statement, balance sheet, cash flow statement, statement of change in equity, all notes thereto, and the auditor's opinion." *Id.* In response, SeAH provided a copy of its unconsolidated financial statements for its 2018 fiscal year, which covered the period from its date of incorporation (*i.e.*, September 1, 2018) through December 31, 2018, as well as unconsolidated financial statements for the fiscal/calendar years 2019 and 2020, which were presented in a single combined report. SeAH Initial Questionnaire Response at Appendices 3-A and 3-B (Jan. 10, 2022) (C.R. 139-141, P.R. 169-171). These were the only financial statements provided.

On the afternoon of the penultimate day of verification, as Commerce attempted to confirm the reported non-use of programs, SeAH for the first time attempted to present Commerce with additional, not previously provided financial statements, covering the fiscal years ending as of December 31, 2018 and 2019. SeAH Verification Report at 9-10 (Sept. 1,

2022) (C.R. 265, P.R. 345); *see also* SeAH Rejected Case Brief at Attachment 2, 3-4 (Sept. 8, 2022) (C.R. 273, P.R. 353). These financial statements were not previously provided by SeAH in response to Commerce's initial questionnaire. Notably, Note 34 to these financial statements identifies "Payment guarantees" outstanding as of December 31, 2019, which include an outstanding guarantee from the Korea Export-Import Bank ("KEXIM"). *Id.* at Attachment 2, Exhibit 1 ("'Non-Use' Package Presented to Verifiers on Wednesday, August 24, 2022") at 7.[2]

Commerce declined to accept the materials presented by SeAH at verification to ostensibly demonstrate non-use of the KEXIM Performance Guarantee program, explaining that "the offered documentation … constituted new factual information." SeAH Verification Report at 10 (Sept. 1, 2022) (C.R. 265, P.R. 345). Evidently undeterred, SeAH's initial case brief filed in advance of Commerce's final determination included the entire packet of information that Commerce had declined to accept at verification. SeAH Rejected Case Brief at Attachment 2 (Sept. 8, 2022) (C.R. 273, P.R. 353). Commerce again rejected this information from the record, explaining that Attachment 2 of SeAH's rejected case brief consisted of "untimely new factual information, the deadline for which was not later than February 7, 2022," and which had "not previously been placed on the record of this proceeding." First Rejection Letter, (Sept. 9, 2022) (P.R. 357). In response to objections from SeAH, Commerce again explained that SeAH's rejected case brief included "untimely new factual information that should have been included in

---

[2] As discussed below, Commerce legally and appropriately rejected this material from the record of the administrative proceeding. Commerce did, however retain a copy pursuant to 19 C.F.R. § 351.104(a)(2)(ii). Defendant-Intervenors refer to this information solely for the purpose of highlighting how SeAH failed to provide a complete and timely response to the initial questionnaire and withheld the requested financial statements until verification, impeding Commerce's investigation.

SeAH Steel's initial response to section III of the questionnaire." Second Rejection Letter (Sept. 13, 2022) (P.R. 363).

In the Final Determination, Commerce concluded that SeAH failed to report its use of the KEXIM Performance Guarantee program in response either to the questions directed towards the program under that name or to Commerce's request for information on "other subsidies" in the initial questionnaire. IDM at 70-74 (P.R. 377). Moreover, Commerce highlighted that the 2019 financial statement SeAH attempted to present at verification was not part of the administrative record. *Id.* at 75.

## STANDARD OF REVIEW

The applicable standard of review is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i). Pursuant to the statute, the Court holds unlawful any determination found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In evaluating Commerce's determination, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Defendant-Intervenors further agree with the detailed discussion of the standard of review and the legal framework set out in Defendant's response brief. DOJ Br. at 8-9.

**ARGUMENT**

**I.    The Information Provided by SeAH at Verification Constitutes Untimely New Factual Information**

In the initial questionnaire, Commerce requested that SeAH "provide your company's complete audited financial statements for the last three fiscal years." Initial Questionnaire at Section III at 4 (Nov. 24, 2021) (P.R. 129). These financial statements, Commerce explained, "should include the complete set of statements, *e.g.*, income statement, balance sheet, cash flow statement, statement of change in equity, all notes thereto, and the auditor's opinion." *Id.*

SeAH was not fully responsive to Commerce's request for the company's complete audited financial statements for the three fiscal years including and preceding the period of investigation ("POI"). In its response to Commerce's initial questionnaire, SeAH provided two separate sets of unconsolidated financial statements. The first set covered the fiscal year ending December 31, 2018. SeAH Initial Questionnaire Response at Appendix 3-A (Jan. 10, 2022) (C.R. 139-141, P.R. 169-171). The second set were combined for the fiscal years ending December 31, 2019 and 2020. *Id.* at Appendix 3-B. Thus, whereas Commerce requested complete *statements* for "three" years, SeAH provided two sets of documents that contained *information* about 2018, 2019, and 2020, but omitted to disclose the existence of a third *statement*. *See id.* at 18. As a consequence, Commerce was led to believe SeAH had provided what Commerce requested, when in fact the documents provided by SeAH in its initial questionnaire response do not consist of the "complete audited financial statements for the last three fiscal years," nor do they contain the complete set of "notes thereto" as Commerce requested. Unbeknownst to Commerce, there existed a third set of unconsolidated financial statements, covering the fiscal years ending December 31, 2018 and December 31, 2019, with

their own income statement, balance sheet, and notes. In contravention of Commerce's request, SeAH did not provide this third set in its response to the initial questionnaire.

The existence of SeAH's unconsolidated 2018-19 financial statements only became evident at verification, when in the afternoon of the penultimate day, SeAH presented them as part of a "non-use" package intended to demonstrate the irrelevance of SeAH's performance guarantees from KEXIM. From what is available in the administrative record presented to this Court, it is evident that SeAH's unconsolidated 2018-19 financial statements contain important information not found elsewhere on the record that would have warranted further investigation by Commerce had these financial statements been timely provided, as requested in Commerce's initial questionnaire.[3] Most relevant here, SeAH's unconsolidated 2018-19 financial statements contain information pertinent to SeAH's reported non-use of the KEXIM Performance Guarantee program. At Note 34 to the unconsolidated 2018-19 financial statements, SeAH identifies "{p}ayment guarantees provided by others as of December 31, 2019…." SeAH Rejected Case Brief at Attachment 2, Exhibit 1 at 7 (Sept. 8, 2022) (C.R. 273, P.R. 353). Listed among the guarantors is KEXIM, in connection with a subsidy program alleged in the petition, and initiated upon by Commerce. *Id.*

Critically, the information contained in Note 34 to SeAH's unconsolidated 2018-19 financial statements is <u>not</u> present in any other documentation relied upon by Commerce in the final determination, including the unconsolidated financial statements covering the years 2019-20. In its initial questionnaire response, SeAH provided a set of unconsolidated financial statements covering the combined 2019 and 2020 fiscal years. SeAH Initial Questionnaire

---

[3] Indeed, because this third set of financial statements was withheld until verification, the full extent to which they provide information not included in the other two sets of financial statements provided to Commerce is unclear.

Response at Appendix 3-B (Jan. 10, 2022) (C.R. 139-141, P.R. 169-171). Although the

unconsolidated 2019-2020 statements purport to carry forward certain data related to the fiscal

year ending December 31, 2019, the unconsolidated 2018-19 financial statements that SeAH

withheld until verification demonstrate that the information provided in the two sets of financial

statements is not the same. In particular, the unconsolidated 2018-19 financial statements have a

specific note (*i.e.*, Note 34) dedicated to the provision of payment guarantees provided to SeAH,

which identifies each guarantor and the amount of the guarantee outstanding at the end of the

2019 fiscal year—*including specific reference to outstanding performance guarantees from*

*KEXIM*. By contrast, the unconsolidated 2019-20 financial statements provided in SeAH's initial

questionnaire response, at Note 35, "Commitments and contingencies," only states with regard to

performance guarantees:

> The Company has received ₩17,712 million of guarantees for
> performance and warranty from Seoul Guarantee Insurance. Also,
> the Company is provided with payment guarantees for opening
> letter of credit in relation to import of raw materials with the limit
> of up to USD 137,500 thousand from KEB Hana Bank and others.
> Also, the Company provided with payment guarantees for
> performance of other contracts with the limit of up to USD 10,386
> thousand.

*Id.* Notably absent from this discussion are the dates for which these guarantees would be

outstanding. In addition, while this statement identifies two of SeAH's guarantors for the years

2019 and 2020, the remaining guarantors, *including KEXIM*, remain unidentified in these

financial statements. *Id.*

The facts in this case are incontrovertible. The unconsolidated 2018-19 financial

statements proffered by SeAH at verification are separate and distinct from the two sets of

unconsolidated financial statements, covering 2018 and 2019-20, respectively, that the company

provided to Commerce in response to the initial questionnaire. Moreover, the financial

statements that were offered for the first time at verification contain factual information that
(1) is relevant to Commerce's investigation of the KEXIM Performance Guarantee program and
(2) was not contained in the previously submitted financial statements. In fact, the 2018-19
financial statements provided at verification include the identities of each guarantor (including
KEXIM), and the balances outstanding as of December 31, 2019, which were not available in the
combined 2019-20 financial statements that were provided in SeAH's response to the initial
questionnaire. SeAH's standalone unconsolidated financial statements for 2018-19 fell squarely
within the scope of Commerce's initial questionnaire, which instructed SeAH to "provide your
company's complete audited financial statements for the last three fiscal years" and "all notes
thereto." Initial Questionnaire at Section III at 4 (Nov. 24, 2021) (P.R. 129).

     As Commerce explained in the Final Determination, the materials offered to demonstrate
non-use at verification were requested in the initial questionnaire, and were therefore due to be
provided to Commerce no later than January 10, 2022, pursuant to 19 C.F.R. § 351.301(c)(1).
IDM at 74 (P.R. 377). Given their untimeliness, Commerce correctly dismissed SeAH's
arguments that relied on these documents, noting in particular that "the 2019 financial statement
SeAH Steel claims were in the packet of rejected materials and is not present on the record of
this proceeding," and that SeAH's arguments were therefore "not supported by record evidence."
IDM at 75 (P.R. 377).

## II. Commerce Lawfully Excluded Untimely New Factual Information From the Record of the Investigation, Leaving Gaps in the Administrative Record

     Pursuant to 19 C.F.R. § 351.301(c)(1), Commerce "will not consider or retain in the
official record of the proceeding unsolicited questionnaire responses… or untimely filed
questionnaire responses." While SeAH argues that its presentation of the non-use package at
verification, including the unconsolidated 2018-19 financial statements, was part of an effort to

"corroborate, support, and clarify factual information already on the record," SeAH mischaracterizes both its actions and the materials presented. SeAH Br. at 24 (quoting SeAH Verification Agenda (Aug. 9, 2022) (P.R. 332)). As discussed, *supra*, the information included in the package presented at verification constitutes untimely new factual information, and does not "corroborate, support, and clarify factual information already on the record." *Id.*

The Court has long distinguished between attempts to submit "corrective information" of the sort meant to corroborate, support, or clarify existing factual information, and untimely new factual information. For instance, in *Guizhou Tyre Co., Ltd. v. United States*, the Court affirmed Commerce's determination to reject a respondent's reporting of previously undisclosed loans as new factual information when they were reported just two weeks prior to verification, explaining that "the burden of creating an adequate record lies with interested parties and not with Commerce," and that the respondent failed to provide responsive information to the initial questionnaire within the established timeline. *Guizhou Tyre Co., Ltd. v. United States*, 523 F. Supp. 3d 1312, 1345 (CIT 2021) (citing *Nan Ya Plastics Corp. v. United States,* 810 F.3d 1333, 1337 (Fed. Cir. 2016)). The Court elaborated that it "has held that Commerce abuses its discretion by rejecting 'corrective information,' which includes submissions 'to correct{} information *already provided* {to Commerce}' … or to 'clarif{y} information *already in the record*' … but not to 'fill {} gap{s} cause by {a respondent's} failure to provide a questionnaire response… .'" *Id.* (citing *Goodluck India Limited v. United States*, 393 F. Supp. 3d 1352, 1357-1358 (CIT 2019) (emphasis supplied) (citing *Fischer S.A. Comercio v. United States*, 700 F. Supp. 2d 1364, 1373-1377 (CIT 2010))). As in the investigation underlying *Guizhou Tyre*, SeAH's untimely provision of the 2018-19 financial statements at verification "did not 'corroborate, support and clarify factual information on the record;' rather, it was an attempt to

fill gaps in the record caused by {the respondent's} own failure to respond fully to Commerce's questionnaires." *Id.* at 1348.

The Court has explained that the "{t}he purpose of verification is to 'verify the accuracy and completeness of submitted factual information'" and that it "is not a forum for respondents to provide or for Commerce to accept or collect new factual information." *Id.* at 1350. Thus, where a respondent's unwillingness to timely provide requested information precludes Commerce from fully investigating and verifying that information, a refusal to accept that information is consistent with Commerce's statutory obligation to "verify all information relied upon in making … a final determination." *Id.* at 1349-50 (quoting 19 U.S.C. § 1677m(i)).

Given that the unconsolidated 2018-19 financial statements were provided by SeAH only on the penultimate day of verification, despite a clear request in Commerce's initial questionnaire for SeAH's complete financial statements for the three most recent years, the Court "cannot now consider evidence that Commerce itself never considered." *Canadian Solar International Limited v. United States*, CAFC Case No. 2020-2162, 2023 WL 3557852 (Fed. Cir. May 19, 2023) (quoting favorably *Canadian Solar Int'l Ltd. et al. v. United States*, 399 F. Supp. 3d 1379 (CIT 2019)). Commerce therefore acted lawfully in rejecting SeAH's untimely financial statements from the record and not relying on them for the purposes of the final determination. Consequently, in addition to the other reporting failures discussed in Defendant's Response Brief, the absence of the 2018-19 financial statements from the record created a gap within the meaning of subsection (1) of 19 U.S.C. § 1677e(a). *See* IDM at 75 (noting that the 2018-19 financial statements on which SeAH attempts to rely are "not present on the record"). Indeed, the absence of the 2018-19 financial statements and associated notes related to the KEXIM performance guarantee program is part of SeAH's broader failure to report is usage of that

program, and thus furthermore constitutes a gap in the record within the meaning of subsections

(2)(A), (2)(C), and (2)(D) of 19 U.S.C. § 1677e(a).  *See* IDM at 71-73 (noting that SeAH had

"failed to report" its usage of the KEXIM performance guarantee program in response to the

initial questionnaire ((a)(2)(A)), and that this shortcoming "significantly impeded" Commerce's

investigation ((a)(2)(C)) and "precluded" Commerce from verifying necessary information

related to the program ((a)(2)(D))).

### III.   Commerce Lawfully Applied Adverse Facts Available to Fill Gaps Caused by SeAH's Failure to Provide Information Requested by Commerce

Defendant-Intervenors agree with the legal framework set forth in the Government's brief

regarding the application of adverse facts available. DOJ Br. at 14.

Defendant-Intervenors further emphasize that, just as SeAH's failure to report its usage

of the KEXIM performance guarantee program constituted a failure to cooperate to the best of its

ability, *see* DOJ Br. at 20-23, so too did SeAH's exclusion of its unconsolidated 2018-19

financial statements from its response to Commerce's initial questionnaire represent a further

failure to fully cooperate with Commerce's requests for information. SeAH's omission of these

financial statements from its questionnaire response precluded Commerce (and Defendant-

Intervenors) from considering them over the entire course of the investigation, despite the

withheld financial statements containing detailed financial information and notes for 2019 as

well as specific information pertinent to Commerce's analysis of the KEXIM Performance

Guarantee program, and/or any "Other Subsidies" SeAH received.  Initial Questionnaire at

Section III at 4, 18 (Nov. 24, 2021) (P.R. 129).

"The mere production of a substantial volume of documents does not, *ipso facto*,

demonstrate that a respondent acted to the best of its ability. The inquiry is 'whether a

respondent has put forth its maximum effort to provide Commerce with full and complete

answers to all inquiries in an investigation.'" *Hyundai Heavy Indus., Co. v. United States*, 399 F. Supp. 3d 1305, 1312 (CIT 2019), (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)). While voluminous, the financial statements provided by SeAH in its initial questionnaire response were an incomplete response to Commerce's request for information.

SeAH's failure to provide the unconsolidated 2018-19 financial statements significantly impeded Commerce's investigation, because they contain several threads that Commerce could have begun pulling as early as January 2022, most obviously the fact that KEXIM was identified as a guarantor of SeAH as of December 31, 2019. If Commerce had this information at the outset of the investigation, Commerce could have asked SeAH whether this performance guarantee from KEXIM was in effect during the POI and whether SeAH utilized the guarantee during the POI. SeAH's failure to provide this information—as no mention of a KEXIM performance guarantee is made in the two sets of financial statements it did provide—precluded Commerce (and Defendant-Intervenors) from meaningfully interrogating SeAH's bare assertion that it "did not have any performance guarantees from KEXIM for loans that were outstanding during the investigation period," which was the entirety of SeAH's response to Commerce's question regarding the KEXIM Performance Guarantee program. SeAH Initial Response at 27 (Jan. 10, 2022) (C.R. 135-138 P.R. 167-168). Given that SeAH's questionnaire response included sets of financial statements containing information for 2018, 2019, and 2020, Commerce had a reasonable basis to expect that SeAH had provided what Commerce had requested, or that SeAH would have informed Commerce of the existence of a third set of financial statements and SeAH's basis for withholding that third set, so that Commerce could investigate SeAH's position. *See POSCO v. United States*, 296 F. Supp. 3d 1320, 1338 (CIT 2018).

SeAH has continued to argue that it was responsive to Commerce's request and that the untimely financial statements provided as a part of its non-use package presented at verification were "requested by Commerce's verification agenda." SeAH Br. at 27. However, this is not so, as the company chose not to provide all the relevant information regarding the KEXIM Performance Guarantee program because it had apparently determined, on its own, that the program provided no benefit attributable to the period of investigation and because the benefit was related to a sale of non-subject merchandise to a third country. SeAH Verification Report at 10 (Sept. 1, 2022) (C.R. 265, P.R. 345). To the extent that there was any confusion concerning the type of program being investigated, or to which products or destination countries the program applied, it was incumbent on SeAH to request additional clarification from Commerce rather than unilaterally determining to withhold the information of which it alone was aware. *Changzhou Trina Solar Energy Co. v. United States*, 195 F. Supp. 3d 1334, 1346 (CIT 2016) ("{A}ny confusion concerning the tax deduction for disabled employees… should have been addressed by seeking guidance from Commerce, rather than categorically withholding the information."). Where "there is no indication that {a respondent} attempted in good faith to comply with Commerce's request for information" regarding the full scope of a program's use, the application of adverse facts available is warranted so long as the "record reasonably supports Commerce's determination that the {respondent} failed to cooperate by not acting to the best of its ability to comply with the request for information…" *Id.*

The fact that the financial statements withheld by SeAH were only unearthed at verification further warrants a finding that SeAH significantly impeded the proceeding pursuant to 19 U.S.C. § 1677e(a). *POSCO v. United States*, 296 F. Supp. 3d 1320, 1337–38 (CIT 2018) ("POSCO's inaccurate questionnaire responses and untimely submission of new factual

information at verification prevented Commerce from fully examining the extent to which POSCO's affiliates benefitted from subsidies attributable to POSCO. {citation omitted}. There is, thus, substantial evidence on the record demonstrating that POSCO withheld information, failed to timely provide information, and impeded the proceeding pursuant to 19 U.S.C. § 1677e(a)."). In a scenario where a respondent has responsive information available to it, but elects not to provide it, the Federal Circuit has found that the application of adverse facts available is warranted because "{s}uch behavior cannot be considered 'maximum effort to provide Commerce with full and complete answers.'" *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1360 (Fed. Cir. 2017) (quoting *Nippon Steel v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)).

Given SeAH's unwillingness to put forth its best efforts to provide the financial statements requested of it in response to Commerce's initial questionnaire, the application of adverse facts available is warranted in finding that SeAH benefited from the KEXIM Performance Guarantee program during the POI.

**CONCLUSION**

For the reasons in this and Defendant's response brief, this Court should reject Plaintiff's challenge and uphold Commerce's final determination as supported by substantial evidence and in accordance with law. Defendant-Intervenors therefore respectfully request that Plaintiff's motion for judgment on the agency record be denied.

Respectfully submitted,

<u>/s/ *Christopher T. Cloutier*</u>
Roger B. Schagrin
Christopher T. Cloutier
Luke A. Meisner
Justin M. Neuman*
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel to Borusan Mannesmann Pipe U.S., Inc., PTC Liberty Tubulars LLC, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Welded Tube USA, Inc.*

*Admitted only in Ohio. Practice limited to federal agencies and courts.

Dated: May 30, 2023

16

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing response brief complies with the word-count limitation in this Court's Order of February 15, 2023, limiting this brief to 6,500 words. This response brief contains 4,189 words according to the word count function of the word processing software used to prepare the brief.

Dated: May 30, 2023

<u>/s/ *Christopher T. Cloutier*</u>
Christopher T. Cloutier

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| _____ ) | | |
| SEAH STEEL CORPORATION, ) | | |
| ) | | |
| *Plaintiff,* ) | | |
| ) | Court No. 22-00338 | |
| v. ) | | |
| ) | | |
| UNITED STATES, ) | | |
| ) | | |
| *Defendant,* ) | | |
| ) | | |
| and ) | | |
| ) | | |
| BORUSAN MANNESMANN PIPE ) | | |
| U.S. INC., ET AL., ) | | |
| ) | | |
| *Defendant-Intervenors.* ) | | |
| ) | | |
| _____ ) | | |

## <u>PROPOSED ORDER</u>

Upon consideration of the motion for judgment on the administrative record filed by

plaintiff, the responses thereto filed by the defendant and the defendant-intervenors, plaintiff's

reply, the administrative record, and all other papers and proceedings herein, it is hereby:

**ORDERED** that the motion is **DENIED**; and it is further

**ORDERED** that the U.S. Department of Commerce's final determination is sustained;

and it is further

**ORDERED** that judgment is entered in favor of the defendant.

It is **SO ORDERED**.

_____
HON. MARK A. BARNETT, CHIEF JUDGE

Dated: _____, 2023
    New York, New York