Slip Op. 23-141

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEAH STEEL CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>BORUSAN MANNESMANN PIPE U.S., INC., ET AL.,<br><br>        Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge<br>Court No. 22-00338 |

## OPINION

[Denying Plaintiff's motion for judgment on the agency record and sustaining the U.S. Department of Commerce's final determination in the countervailing duty investigation of oil country tubular goods from the Republic of Korea]

Dated: September 26, 2023

Amrietha Nellan and Jeffrey M. Winton, Winton & Chapman PLLC, of Washington, DC, argued for Plaintiff SeAH Steel Corporation.

Hardeep K. Josan, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Claudia Burke, Deputy Director. Of counsel on the brief was Spencer Neff, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Christopher T. Cloutier and Justin M. Neuman, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenors Borusan Mannesmann Pipe U.S. Inc., et al. With them on the brief were Roger B. Schagrin, and Luke A. Meisner.

Barnett, Chief Judge: This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") final determination in the countervailing duty investigation of oil country tubular goods ("OCTG") from the Republic of Korea ("Korea"). Compl., ECF No. 4; *see Oil Country Tubular Goods From the Republic of Korea*, 87 Fed. Reg. 59,056 (Dep't Commerce Sept. 29, 2022) (final affirmative countervailing duty determination) ("*Final Determination*"), ECF No. 18-4, and accompanying Issues and Decision Mem., C-580-913 (Sept. 23, 2022) ("I&D Mem."), ECF No. 18-5.[1]

Plaintiff SeAH Steel Corporation ("SeAH") challenges two aspects of the *Final Determination*, namely: (1) Commerce's decision to use adverse facts available ("AFA") for the Korean Export-Import Bank ("KEXIM") Performance Guarantee program, and (2) Commerce's finding that the performance guarantee obtained by SeAH constituted a countervailable subsidy during the investigation period. *See* Confid. Br. of [SeAH] in Supp. of Its Rule 56.2 Mot. for J. on the Agency. R. ("Pl.'s Mem."), ECF No. 23; Reply Br. of [SeAH] ("Pl.'s Reply"), ECF No. 28. Defendant United States ("the Government") and Defendant-Intervenors[2] responded to Plaintiff's arguments in support of

---

[1] The administrative record for the *Final Determination* is contained in a Public Administrative Record ("PR"), ECF No. 18-2, and a Confidential Administrative Record ("CR"), ECF No. 18-3. Parties filed joint appendices containing record documents cited in their briefs. *See* Public J.A., ECF No. 31; Confid. J.A. ("CJA"), ECF No. 30. Citations are to the CJA unless stated otherwise.

[2] Defendant-Intervenors consist of Borusan Mannesmann Pipe U.S., Inc.; PTC Liberty Tubulars LLC; the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC; and Welded Tube USA, Inc. (collectively, "Defendant-Intervenors").

Commerce's determination. Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. upon the Agency R. ("Def.'s Resp."), ECF No. 26; Resp. Br. of Def.-Ints. in Opp'n to Pl.'s Mot. for J. on the Agency R. ("Def.-Ints.' Resp."), ECF No. 27.

For the reasons discussed herein, Commerce's *Final Determination* will be sustained.

## BACKGROUND

On October 5, 2021, Defendant-Intervenors, members of the domestic industry, filed a petition with Commerce and the U.S. International Trade Commission seeking countervailing duties on OCTG from numerous countries including, as relevant here, Korea. *See* Pet. for the Imposition of Antidumping and Countervailing Duties Pursuant to Sections 701 and 731 of the Tariff Act of 1930, as Am. (Oct. 5, 2021) ("Pet."), PR 6, CJA Tab 1. Commerce initiated a countervailing duty investigation of OCTG from Korea on October 26, 2021, for the period of investigation ("POI") January 1, 2020, through December 31, 2020. *See Oil Country Tubular Goods From the Republic of Korea and the Russian Fed'n*, 86 Fed. Reg. 60,210 (Dep't Commerce Nov. 1, 2021) (initiation of less-than-fair-value investigations). Commerce selected SeAH as a mandatory respondent for the investigation. *See* Resp't Selection (Nov. 22, 2021), CR 188, PR 127, CJA Tab 3.

Commerce issued an initial questionnaire to SeAH in which the agency requested "details regarding all assistance . . . received under [the KEXIM] program during the POI" under the heading "KEXIM Performance Guarantees." Commerce's Initial Questionnaire (Nov. 24, 2021) ("Initial Questionnaire"), Section III at 8, PR 129,

CJA Tab 4.  KEXIM performance guarantees are extended to Korean exporters, and guarantee performance in connection with certain eligible contracts, often taking the form of a bid bond, advance payment bond, performance bond, or retention bond.  *See* Pet. at 20.  In the Initial Questionnaire, Commerce also asked whether Korea provided, directly or indirectly, any other forms of assistance to SeAH during the POI, "including the amounts, date of receipt, purpose, and terms."  Initial Questionnaire, Section III at 18.  In response, SeAH stated that it "did not have any performance guarantees from KEXIM for loans that were outstanding during the investigation period."  Resp. of [SeAH] to Section III of the Dep't's Nov. 24 Questionnaire (Jan. 10, 2022) at 27, CR 135–41, PR 167–71, CJA Tab 5.[3]

On March 9, 2022, Commerce preliminarily determined that SeAH did not receive KEXIM performance guarantees during the POI.  *See Oil Country Tubular Goods From the Republic of Korea*, 87 Fed. Reg. 14,248 (Dep't Commerce Mar. 14, 2022) (prelim. negative countervailing duty determination and alignment of final determination with final antidumping duty determination) ("*Prelim. Determination*"), PR 284, CJA Tab 9.  While Commerce preliminarily determined that countervailable subsidies were not

---

[3] Additionally, in a later section of the Initial Questionnaire titled "Other Subsidies," Commerce asked if "the [Government of Korea ("GOK")] (or entities owned directly, in whole or in part, by the GOK or any provincial or local government) provide, directly or indirectly, any other forms of assistance to your company during [the] POI and [the] entire . . . AUL [average useful life] period."  Initial Questionnaire, Section III at 18.  SeAH did not report receiving any assistance under the KEXIM program in response to this question either.  *See* I&D Mem. at 60–71.

provided to SeAH, the agency stated its intent to verify the information submitted by SeAH.  *Id.* at 14,249.

Commerce issued a verification agenda to SeAH outlining the information to be verified, including SeAH's non-use of the KEXIM Performance Guarantee program. *See* Verification of [SeAH's] Questionnaire Resps. (Aug. 9, 2022) ("Verification Ltr.") and accompanying Verification Agenda at 1–2, 6–8, PR 332, CJA Tab 12.  The Verification Agenda stated that "verification is not intended to be an opportunity for the submission of new factual information" and that the only types of information that would be accepted at verification were minor corrections to information already on the record, and information that corroborated, supported, or clarified factual information already on the record.  Verification Ltr. at 2.  On September 1, 2022, Commerce issued its verification report, which documented that SeAH offered information demonstrating that the company had an outstanding KEXIM performance guarantee during the POI.  *See* Verification of the Questionnaire Resps. of [SeAH] at 9–10 (Sep. 1, 2022) ("Verification Report"), CR 265, PR 345, CJA Tab 13.  Commerce did not accept the information provided by SeAH, stating that the documentation was new factual information.  *See id*.

Commerce issued its *Final Determination* on September 29, 2022, in which it determined to rely on the "facts available with an adverse inference to find that SeAH Steel received a countervailable benefit from the KEXIM Performance Guarantee program."  I&D Mem. at 70.  This appeal followed, and the court heard oral argument on August 16, 2023.  *See* Docket Entry, ECF No. 35.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2018) and 28 U.S.C. § 1581(c) (2018).[4] The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). Furthermore, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). While Commerce's conclusion must be supported by substantial evidence, 19 U.S.C. §1516a(b)(1)(B), "the possibility of drawing two different conclusions from the evidence does not prevent [Commerce's] finding from being supported by substantial evidence," *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

### DISCUSSION

SeAH argues that Commerce's decision to use AFA and conclusion that the KEXIM Performance Guarantee program constituted a countervailable subsidy were both unsupported by substantial evidence and contrary to law. *See* Pl.'s Mem. at 2–5.

---

[4] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise specified.

Court No. 22-00338 Page 7

I. **Whether Commerce's Decision to Use AFA for the KEXIM Performance Guarantee Program is Supported by Substantial Evidence and in Accordance with Law**

   **A. Legal Background**

When "necessary information is not available on the record," or an interested party "withholds information" requested by Commerce, "fails to provide" requested information by the submission deadlines, "significantly impedes a proceeding," or provides information that cannot be verified pursuant to 19 U.S.C. §1677m(i), Commerce "shall . . . use the facts otherwise available." 19 U.S.C. §1677e(a). Once Commerce determines that the use of facts otherwise available is warranted, if Commerce also "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b). Furthermore, "[c]ompliance with the 'best of its ability' standard is determined by assessing whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003); *see also Essar Steel Ltd. V. United States*, 678 F.3d 1268, 1275–76 (Fed. Cir. 2012). In the event a respondent has relevant information but does not provide it, "[s]uch behavior cannot be considered 'maximum effort to provide Commerce with full and complete answers.'" *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1360 (Fed. Cir. 2017) (quoting *Nippon Steel*, 337 F.3d at 1382).

Commerce has broad discretion to fashion its own rules of administrative procedure, including the authority to establish and enforce time limits concerning the submission of written information and data. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 544–45 (1978). The purpose of verification is for Commerce to "confirm information previously submitted by a respondent in response to Commerce's requests for information" while also "test[ing] information provided by a party for accuracy and completeness." *Hung Vuong Corp. v. United States*, 44 CIT __, __, 483 F. Supp. 3d 1321, 1335–36 (2020). Furthermore, Commerce reasonably may limit its acceptance of new information at the verification stage to "minor corrections and clarifications." *China Steel Corp. v. United States*, 43 CIT __, __, 393 F. Supp. 3d 1322, 1342 (2019).

### B. Parties' Contentions

Plaintiff contends that Commerce's decision to reject information presented by SeAH at verification and base its determination on AFA was unsupported by substantial evidence and contrary to law. *See* Pl.'s Mem. at 19–30. Plaintiff argues that the only KEXIM performance guarantee received by the company was in 2019, and that Commerce did not explicitly request information regarding performance guarantees received prior to 2020. *See id.* at 20–21. Plaintiff further argues that Commerce's rejection of the information submitted at verification was inconsistent with the instructions provided in Commerce's Verification Agenda and should have been accepted by Commerce to demonstrate SeAH's non-use of the KEXIM Performance

Court No. 22-00338                                                                                                Page 9

Guarantee program.[5]  See id. at 23–27.  Plaintiff also argues that the information contained in SeAH's case and rebuttal briefs should not have been rejected by Commerce as untimely new factual information because the information "simply described what was actually presented and discussed at the verification."[6]  Id. at 27–30.[7]

      The Government responds that SeAH's submission of materials related to its usage of the KEXIM Performance Guarantee program in 2019 at verification constituted "new evidence that contradicted information SeAH had already reported."  Def.'s Resp. at 11.  The Government further contends that Plaintiff may not submit information

---

[5] Plaintiff points to instructions in the Verification Agenda requesting SeAH to (1) "provide all appropriate source records to substantiate the completeness and accuracy of the information in the responses, including . . . non-use of programs," and (2) "be prepared to demonstrate that SeAH . . . did not receive assistance under these programs."  Pl.'s Mem. at 12.

[6] Plaintiff avers that the rejected information presented to Commerce during verification was not new or untimely.  See id. at 15–17.  This rejected information included (1) the total amount of the KEXIM performance guarantee SeAH received in 2019, and (2) the sworn statement by the accountant who prepared the materials on the KEXIM Performance Guarantee program.  Id.  Plaintiff also argues that this information presented at verification should be considered as part of the administrative record and that the record evidence does not support Commerce's conclusion that the 2019 KEXIM performance guarantee constituted a countervailable subsidy during the POI.  See id. at 37–46.  However, this argument is moot because this court affirms Commerce's determination that the information submitted at verification is properly excluded from the administrative record.  See infra, pp. 13–14.

[7] Plaintiff also asserts that Commerce failed to meet its obligation under 19 U.S.C. § 1677e(b)(1) because the agency did not corroborate the subsidy rate used as AFA for the KEXIM Performance Guarantee program.  See Pl.'s Mem. at 44–45.  However, SeAH merely disagrees with the rate selected by Commerce and 19 U.S.C. § 1677e(b)(1) confirms that Commerce is not obligated to determine or adjust a selected AFA rate "based on any assumptions about information [SeAH] would have provided if [SeAH] had complied with the request for information."

related to the KEXIM Performance Guarantee program at verification and in subsequent briefs because SeAH was required to have reported its usage of the program in response to Commerce's Initial Questionnaire. *See id.* at 9. The Government asserts that Commerce requested information regarding "loans that were either received in or outstanding during the period of investigation" in the Initial Questionnaire, *id.* at 14–15, and SeAH's failure to submit information regarding the outstanding 2019 KEXIM performance guarantee left Commerce with both inadequate time to evaluate the program and a gap in the record warranting the use of AFA, *see id.* at 18–19. The Government also argues that SeAH withheld information, significantly impeded Commerce's review, and did not act to the best of its ability because SeAH: (1) had access to, and familiarity with, its records demonstrating an ability to report its usage of the KEXIM Performance Guarantee program in response to the Initial Questionnaire; (2) unilaterally determined to substitute its own judgment for Commerce's with respect to interpreting the questions presented in the Initial Questionnaire; and (3) had ample opportunity to clarify its understanding of the Initial Questionnaire. *See id.* at 22–23.

      Defendant-Intervenors echo the Government's position. *See* Def.-Ints.' Resp. at 6–16.

### C. Analysis

      Here, Commerce specifically asked SeAH to provide "details regarding all assistance that your company received under this [KEXIM Performance Guarantee] program during the POI." Initial Questionnaire, Section III at 8. In response, SeAH did not provide any information regarding the 2019 KEXIM performance guarantee

Court No. 22-00338                                                                                                                              Page 11

outstanding during the POI.[8]  *See* I&D Mem. at 71.  Plaintiff contends that Commerce only requested that "SeAH report KEXIM performance guarantees received during the calendar-year 2020 investigation period," Pl.'s Mem. at 21, and that the KEXIM performance guarantee received prior to 2020 was related to non-subject merchandise, *id*. at 14.  While a plain-text reading of Commerce's Initial Questionnaire dispels this argument, it has long been established that the burden falls on a respondent to clarify its understanding of Commerce's directives and instructions rather than rely on its own interpretation.  *See, e.g.*, *Changzhou Trina Solar Energy Co. v. United States*, 40 CIT __, __, 195 F. Supp. 3d 1334, 1346 (2016) ("[A]ny confusion [based on the Commerce questionnaire] should have been addressed by seeking guidance from Commerce, rather than categorically withholding the information.").  Thus, the responsibility lies not with the agency, but with SeAH to clarify its understanding of the questionnaire in the event of confusion or claimed ambiguity.  SeAH had ample opportunity to seek clarity prior to submitting its response to the Initial Questionnaire.  While Commerce evaluates what is relevant for purposes of its investigation, the role of the respondent is to comply

---

[8] Plaintiff cites *Large Residential Washers From the Republic of Korea*, 77 Fed. Reg. 75,975 (Dep't Commerce Dec. 26, 2012) (final affirmative countervailing duty determination), as supporting its interpretation of Commerce's Initial Questionnaire that a benefit received during a certain year is only reportable in the year of receipt.  *See* Pl.'s Reply at 13 & n.35.  This reliance is misplaced.  Commerce requested SeAH to report all *assistance* received during the POI, not all *benefits*, the term discussed in Plaintiff's cited administrative proceeding.  *See* Initial Questionnaire, Section III at 8.  SeAH concedes that the performance guarantee received in 2019 remained in effect during 2020 (the POI) and that it applied to further shipments made by SeAH in 2020.  *See* Pl.'s Mem. at 13; Case Br. of [SeAH] (Sept. 8, 2022), Ex. 1, CR 273, PR 353, CJA Tab 14.

with such requests for information, regardless of the respondent's perception or substituted judgment. *See POSCO v. United States*, 42 CIT __, __, 353 F. Supp. 3d 1357, 1375 (2018) (identifying an instance when respondents improperly exercised their own discretion in interpreting Commerce's inquiries, substituting their judgment for that of the agency). Here, Commerce reasonably determined that SeAH withheld factual information, thus creating a gap in the administrative record.

Commerce's rejection of information regarding the KEXIM Performance Guarantee program as untimely new information first presented at verification is supported by substantial evidence because the information submitted by SeAH did not corroborate, support, or clarify factual information already on the administrative record. SeAH's failure to provide information regarding its 2019 KEXIM performance guarantee in response to Commerce's Initial Questionnaire significantly impeded the ability of Commerce both to investigate the program and inquire into whether SeAH benefitted from the program during the POI. *See* I&D Mem. at 72–73. Commerce explained that because SeAH did not submit information regarding its use of the KEXIM Performance Guarantee program until verification, the agency had no opportunity to issue supplemental questionnaires to gain additional clarity or determine the countervailability of the KEXIM Performance Guarantee program. *See id*. at 72–74.

Commerce rejected Plaintiff's argument that Commerce was "required to accept the materials that SeAH [] presented at verification" because there was no information on the administrative record related to the KEXIM Performance Guarantee program prior to verification. *Id.* at 74. Commerce explained that the submission of information

related to "non-use" of the program did not fall under the guidelines Commerce provided in its Verification Agenda, in which the agency stated that verification "is not intended to be an opportunity for the submission of new factual information," and that minor corrections presented at verification are only accepted to "corroborate, support, and clarify factual information already on the record." Verification Ltr. at 2. Commerce's determination to categorize SeAH's submission at verification as new factual information is supported by substantial evidence because (1) the information was responsive to Commerce's Initial Questionnaire, and SeAH should have provided the information in response thereto, (2) the information did not corroborate, support, or clarify information already on the record, and (3) Commerce had no opportunity to inquire about or respond to the information presented at verification.

Commerce did not ignore SeAH's claim that the agency "had never requested information on KEXIM performance guarantees received prior to 2020." Pl.'s Mem. at 20. Instead, Commerce explained that "[e]ven if [SeAH] found our questionnaire unclear, it had the opportunity to seek clarification from Commerce or report its use of the KEXIM Performance Guarantee program in response to the 'Other Subsidies' section of the questionnaire." I&D Mem. at 71.

Finally, Plaintiff argues that, in any case, Commerce's decision to reject the information SeAH presented at verification regarding the 2019 KEXIM performance guarantee was improper because Commerce should have placed that information on the administrative record. Pl.'s Mem. at 29–30. While it is true that the record for review by this court includes "a copy of all information presented to or obtained by

[Commerce] during the course of the administrative proceeding," 19 U.S.C. 1516a(b)(2)(A)(i), Commerce retains discretion both to enforce its deadlines, see *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1206–07 (Fed. Cir. 1995), and to determine how to implement its administrative procedures, see *Vt. Yankee Nuclear Power Corp.*, 435 U.S. at 554.  To that end, SeAH has not established that Commerce exceeded its administrative authority when it both rejected the untimely new information presented at verification but, nevertheless, reflected the contents of that new information and its rationale for rejecting it in the verification report.  *See* Verification Report at 9–10.  While Plaintiffs may have preferred for Commerce to accept the 2019 KEXIM performance guarantee informational package Plaintiff submitted at verification, Commerce was not obligated to do so.

In sum, Commerce's decision to use AFA for the KEXIM Performance Guarantee program is supported by substantial evidence and otherwise in accordance with law.

### CONCLUSION

For the reasons discussed above, the court will sustain Commerce's *Final Determination*.  Judgment will enter accordingly.

/s/     Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: <u>September 26, 2023</u>
       New York, New York